[Cite as *State v. Taylor*, 2016-Ohio-5912.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. Sheila G. Farmer, P. J. |
| Plaintiff-Appellee | : | Hon. William B. Hoffman, J. |
| | : | Hon. John W. Wise, J. |
| vs. | : | |
| | : | Case No. 16 CA 17 |
| DAN TAYLOR, JR. | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Appeal from the Court of Common Pleas,
Case No.  15 CR 777

JUDGMENT:      Affirmed

DATE OF JUDGMENT ENTRY:      September 21, 2016

APPEARANCES:

For Plaintiff-Appellee

BAMBI COUCH PAGE
PROSECUTING ATTORNEY
DANIEL M. ROGERS
ASSISTANT PROSECUTOR
38 South Park Street
Mansfield, Ohio  44902

For Defendant-Appellant

DAVID M. WATSON
3 North Main Street
Suite 702
Mansfield, Ohio  44902

*Wise, J.*

{¶1}   Appellant Dan Taylor, Jr. appeals his conviction on two counts of domestic violence and one count of felonious assault following a jury trial.

{¶2}   Appellee is State of Ohio.

### STATEMENT OF THE FACTS AND CASE

{¶3}   On August 29, 2015 around 11:30 p.m., Appellant Dan Taylor, Jr. and his wife M.T. had an argument in the bedroom of the home they shared with M.T.'s father, J.J. in Shelby, Ohio. [T. at 136-140]. According to M.T., the argument arose out of her refusal to drive Appellant to Mansfield to purchase Crack Cocaine. [T. at 183-184]. J.J., a seventy-two (72) year old man with diabetes, went into the bedroom, observed Appellant threatening M.T. with a knife, and attempted to calm Appellant down. [T. at 140-141]. Appellant shoved J.J., causing him to fall into a dresser and cut his arm. *Id.* J.J. left the bedroom and called 911. [T. at 142-143, 182, 185].

{¶4}   When Appellant saw J.J. calling 911, he punched him in the face and knocked out one of his teeth. Appellant then told J.J. "that's for calling the cops." [T. at 142-143, 334-335]. After punching J.J. in the face, Appellant left before the police arrived. [T. at 145].

{¶5}   After leaving, Appellant encountered J.J.'s neighbor, Robert Shetler. [T. at 301-303]. Appellant told Mr. Shetler "you're a cracker. Come over and get some of this. I got my peeps coming. It's your fault." [T. at 303].

{¶6}   Sergeant Bushey, Deputy Berry and Deputy Knee with Richland County Sheriff's Office (RCSO) and Patrolman Hartz with Shelby PD responded to the 911 call. [T. at 178-181, 324-326, 332]. M.T., who had a laceration in her head, informed officers

that Appellant had assaulted her and her father. [T. at 182-183, 185]. M.T. also advised officers that Appellant had left the residence, and that he might be hiding in a nearby field. [T. at 182]. J.J. informed officers that Appellant shoved him and subsequently punched him in the face. [T. at 185].

{¶7} M.T. completed and signed a written statement and Domestic Violence packet indicating that Appellant struck her with a closed fist, slapped her, pushed her, and threatened her with a knife. [T. at 327-330]. J.J. also completed a written statement describing Appellant shoving him and punching him in the face. [T. at 334-335].

{¶8} Dep. Berry recovered a knife from the bedroom Appellant and M.T. shared and observed blood stains on the bed and on the handle of the front door of the house. [T. at 327, 330-332]. Deputies took photographs, which included J.J.'s and M.T.'s injuries, the knife, and the blood stains on the bed and door handle. [T. at 330-334].

{¶9} Shelby EMS also responded and treated J.J. and M.T. for their injuries. J.J and M.T. both declined to be taken to the hospital at that time. [T. at 336]. Officers were unable to locate Appellant and left the scene around 12:45 am on August 30, 2015. [T at. 306].

{¶10} At approximately 1:30 a.m. on August 30, 2015, Appellant returned to the house. [T. at 147-150, 186]. J.J. asked Appellant to leave and when he refused, J.J. grabbed his .12 gauge pump shotgun and fired a "warning shot" into the ground. *Id.* Appellant ignored J.J.'s warnings, walked inside the house, and went into the bedroom with M.T.. *Id.* Appellant punched M.T. in the face, on the opposite side from her earlier laceration, and ordered her to lay in bed with him. [T. at 345-346].

{¶11} Mr. Shetler, his roommate Lynn Moon, and his friend Don McCoy heard the gunshot and called 911. [T. at 305-307, 315-318].They also went over to the house, whereby Mr. Moon took possession of J.J.'s shotgun, unloaded it and placed it on Mr. Shetler's back porch. [T. at 317-319]. Officers with RCSO, Shelby Police Department, Plymouth Police Department and the Ohio State Highway Patrol, along with Shelby EMS, responded to the scene. [Tr. 186-187, 287-288, 340]. Sgt. Bushey seized J.J.'s shotgun and submitted it to RCSO. [Tr.188]. Officers then set up a perimeter around the property to prevent Appellant from leaving the residence. [T. at 189-191, 340]. Dep. Berry looked through the bedroom window and observed Appellant and M.T. lying in bed together. [T. at 191, 341]. Dep. Berry identified himself and ordered Appellant to show his hands. [T. at 342]. Once Dep. Berry had clear view of Appellant's hands, he ordered other officers to enter the residence. Appellant was thereafter arrested without incident. [T. at 191-192, 289-290, 342].

{¶12} As Dep. Berry escorted Appellant to his patrol car, Appellant stated "I'll beat this one like I beat the last seven." [T. at 343]. A subsequent search of Appellant's criminal history revealed multiple prior arrests and convictions for Domestic Violence. [T. at 344-345].

{¶13} Following Appellant's arrest, Shelby EMS transported J.J. and M.T. to Shelby Hospital for treatment. [T.at 151-153, 231- 232, 244]. While at Shelby Hospital, M.T. advised Nurse Natasha Rinehart that Appellant hit her in the head with a beer bottle. [T. at 231-232]. Doctors treated M.T. for the laceration on the right side of her head, swelling on the left side of her head, bruising on her neck, bruising and swelling on her left index finger, and a possible concussion. [T. at 232].

**{¶14}** J.J. advised Nurse Jill Wheeler that Appellant shoved him and punched him in the face. [T. at 247]. Doctors treated J.J. for a cut to his lip, the missing tooth and the laceration to his arm. [T. at 244-247].

**{¶15}** On September 1, 2015, Appellant called M.T. from the jail and asked her to lie about the cause of her injuries. [T. at 216-220].

**{¶16}** On September 3, 2015, Sgt. Henderson with RCSO met with M.T. and photographed her injuries prior to Appellant's preliminary hearing in Mansfield Municipal Court. [T. at 290-291].

**{¶17}** On October 15, 2015, the Richland County Grand Jury indicted Appellant Dan Taylor, Jr. on three (3) counts stemming from the events of August 30, 2015. Counts 1 and 2 of the indictment charged Appellant with Domestic Violence against his wife and father-in-law, a third degree felony pursuant to R.C. 2919.25(A) based on Appellant's prior convictions for Domestic Violence. Count 3 of the indictment charged Appellant with Felonious Assault against his father-in-law, a second-degree felony pursuant to R.C. 2903.11(A)(1).

**{¶18}** On October 16, 2015, Appellant filed a *pro se* "Motion for Speedy Trial" with the Trial Court. The trial court never ruled upon Appellant's "Motion for Speedy Trial."

**{¶19}** During his arraignment on October 17, 2015, Appellant pled not guilty to the indictment. The trial court scheduled a Prosecutor Pretrial for November 10, 2015 and ordered Appellant to not have contact with M.T. or J.J.

**{¶20}** On October 28, 2015, Appellant filed a "Demand for Discovery."

{¶21} On November 2, 2015, the trial court scheduled Appellant's jury trial for November 19, 2015.

{¶22} On November 3, 2015, Appellant filed a "Motion for Continuance of Trial."

{¶23} On September 19 and November 14, 2015, M.T. violated the no-contact orders imposed by Mansfield Municipal Court and the trial court by visiting Appellant in Richland County Jail. [T. at 215]. M.T. signed in under a different name when she visited Appellant. [T. at 215, 217].

{¶24} On November 18, 2015, the trial court granted Appellant's "Motion for Continuance of Trial" and continued Appellant's trial until January 7, 2016.

{¶25} On November 19, 2015, the trial court scheduled a Final Pretrial for December 28, 2015.

{¶26} On January 5, 2016, Appellant, while represented by trial counsel, filed a *pro se* "Motion to Discharge" asking the trial court to dismiss the indictment based on the State violating his speedy trial rights.

{¶27} On January 7, 2016, the trial court continued Appellant's jury trial to February 11, 2016, due to Richland C.P. No. 2015-CR-324 proceeding to trial.

{¶28} On January 28, 2016, the State filed a "Response to Defendant's Motion to Dismiss."

{¶29} On February 9, 2016, the trial court overruled Appellant's "Motion to Discharge" finding that only 160 out of the permitted 270 days had elapsed, as Appellant's "Demand for Discovery" on October 28, 2015, Appellant's "Motion for

Continuance of Trial" on November 3, and the trial court's continuance from February 11, 2016, all tolled Appellant's speedy trial time. *Id.*

{¶30} On February 11, 2016, Appellant's case proceeded to jury trial. During trial, the State presented testimony from nine (9) witnesses and introduced twenty (20) exhibits. [Tr. 261- 263]. The trial court allowed the State to treat M.T. as a court's witness after she provided testimony contradicting her prior statements to police and medical personnel and admitted that she was protecting Appellant. [T. at 203-210].

{¶31} On February 12, 2016, the jury found Appellant guilty on all three (3) counts of the indictment. Following the verdict, the trial court scheduled sentencing for February 17, 2015.

{¶32} On February 17, 2015, the trial court sentenced Appellant to prison terms of three (3) years on Counts 1 and 2 and eight (8) years on Count 3. The trial court ordered that Appellant's sentences on Counts 1 and 3 run consecutively to each other and concurrently with Count 2, for a total prison term of eleven (11) years. The trial court also imposed three (3) years of mandatory post-release control.

{¶33} On February 19, 2016, the trial court issued an order granting Appellant 169 days of jail time credit.

{¶34} Appellant now appeals, raising the following errors for review:

### ASSIGNMENTS OF ERROR

{¶35} "I. THE TRIAL COURT ERRED BY OVERRULING DEFENDANT'S MOTION TO DISCHARGE BECAUSE HE WAS NOT BROUGHT TO TRIAL WITHIN

THE TIME REQUIRED BY SECTIONS 2945.71 AND 2945.72 OF THE REVISED CODE.

**{¶36}** "II. THE TRIAL COURT ERRED BY FAILING TO MERGE THE CONVICTIONS FOR FELONIOUS ASSAULT AND DOMESTIC VIOLENCE IN VIOLATION OF OHIO MERGER LAW AND MR. TAYLOR'S RIGHTS TO DUE PROCESS AND AGAINST BEING SUBJECTED TO DOUBLE JEOPARDY."

**I.**

**{¶37}** In his First Assignment of Error, Appellant argues that the trial court erred in overruling his motion for a speedy trial. We disagree.

**{¶38}** The right to a speedy public trial is established in the Ohio Constitution, Article I, Section 10. "In any trial, in any court, the party accused shall be allowed to appear and defend in person and with counsel; to demand the nature and cause of the accusation against him, and to have a copy thereof; to meet the witnesses face to face, and to have compulsory process to procure the attendance of witnesses in his behalf, and *a speedy public trial* by an impartial jury of the county in which the offense is alleged to have been committed * * *." (Emphasis added.) *See, State v. MacDonald,* 48 Ohio St.2d 66, 68, 357 N.E.2d 40, 42(1976).

**{¶39}** R.C. §2945.71 codifies a defendant's right to a speedy trial and provides the time within which a hearing or trial must be held for specific offenses.

**{¶40}** A person charged with a felony shall be brought to trial within 270 days after the person's arrest or the service of summons. R.C. §2945.71(C)(2). A person against whom one or more charges of different degrees, whether felonies, misdemeanors, or combinations of felonies and misdemeanors, all of which arose out of

the same act or transaction, are pending shall be brought to trial on all of the charges within the time period required for the highest degree of offense charged. R.C. §2945.71(D). Each day an accused is held in jail shall be counted as 3 days. R.C. §2945.71(E).Therefore, a defendant who is held in jail must be brought to trial within ninety (90) days. However, certain events, as set forth in R.C. §2945.72, can extend the ninety-day deadline.

**{¶41}** R.C. §2945.72 provides for a tolling of the time limitations under certain circumstances,

The time within which an accused must be brought to trial, or, in the case of felony, to preliminary hearing and trial, may be extended only by the following:

(A) Any period during which the accused is unavailable for hearing or trial, by reason of other criminal proceedings against him, within or outside the state, by reason of his confinement in another state, or by reason of the pendency of extradition proceedings, provided that the prosecution exercises reasonable diligence to secure his availability;

(B) Any period during which the accused is mentally incompetent to stand trial or during which his mental competence to stand trial is being determined, or any period during which the accused is physically incapable of standing trial;

(C) Any period of delay necessitated by the accused's lack of counsel, provided that such delay is not occasioned by any lack of diligence in providing counsel to an indigent accused upon his request as

required by law;

(D) Any period of delay occasioned by the neglect or improper act of the accused;

(E) Any period of delay necessitated by reason of a plea in bar or abatement, motion, proceeding, or action made or instituted by the accused;

(F) Any period of delay necessitated by a removal or change of venue pursuant to law;

(G) Any period during which trial is stayed pursuant to an express statutory requirement, or pursuant to an order of another court competent to issue such order;

(H) The period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion;

(I) Any period during which an appeal filed pursuant to section 2945.67 of the Revised Code is pending.

{¶42} "Upon motion made at or prior to the commencement of trial, a person charged with an offense shall be discharged if he is not brought to trial within the time required by sections 2945.71 and 2945.72 of the Revised Code." R.C. §2945.73(B). "[S]uch discharge is a bar to any further criminal proceedings against him based on the same conduct." R.C. §2945.73(D).

{¶43} A speedy-trial claim involves a mixed question of law and fact. *State v. Larkin,* 5th Dist. Richland No. 2004–CA–103, 2005–Ohio–3122. As an appellate court,

we must accept as true any facts found by the trial court and supported by competent, credible evidence. With regard to the legal issues, however, we apply a de novo standard of review and thus freely review the trial court's application of the law to the facts. *Id.* When reviewing the legal issues presented in a speedy-trial claim, we must strictly construe the relevant statutes against the state. *Brecksville v. Cook,* 75 Ohio St.3d 53, 57, 661 N.E.2d 706, 709(1996).

{¶44} In the case at bar, Appellant was in jail between August 30, 2015 and February 11, 2016, for a total of 165 days.  However, we find that the time tolled for the following events:

Appellant's Demand Discovery October 28, 2015 – November 4, 2015

Appellant's Motion for Continuance November 3, 2015 – January 7, 2016

Appellant's Motion for Discharge January 5, 2016 – February 9, 2016

Trial court's *sua sponte* continuance January 7, 2016 – February 11, 2016

{¶45} Therefore, the time between October 28, 2015 and February 11, 2016, totaling 106 days, tolled. We therefore find only 59 of the allowable 90 days chargeable against the State.

{¶46} Accordingly, Appellant was tried within the 270–day requirement set forth in R.C. §2945.71(C)(2).

{¶47} Based on the foregoing, we find Appellant's First Assignment of Error not well-taken and hereby overrule same.

## II.

{¶48} In his Second Assignment of Error, Appellant argues that the trial court erred in failing to merge his convictions on Count Two Domestic Violence and Count

Three Felonious Assault, claiming the counts are allied offenses of similar import. We disagree.

**{¶49}** R.C. §2941.25 reads:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

**{¶50}** In *State v. Johnson,* 128 Ohio St.3d 153, 942 N.E.2d 1061, 2010–Ohio–6314, the Ohio Supreme Court held: "When determining whether two offenses are allied offenses of similar import subject to merger under R.C. 2941.25, the conduct of the accused must be considered." *Id.,* at the syllabus. To determine whether offenses are allied offenses of similar import under R.C. 2941.25(A), the question is whether it is possible to commit one offense *and* commit the other with the same conduct, not whether it is possible to commit one *without* committing the other. *Id.* at ¶ 48. If the multiple offenses *can* be committed by the same conduct, then the court must determine whether the offenses *were* committed by the same conduct. *Id.* at ¶ 49. If the answer to both questions is yes, then the offenses are allied and must be merged. *Id.* at ¶ 50. However, if the court determines that the commission of one offense will *never*

result in the commission of the other, or if the offenses are committed separately, or if the defendant has a separate animus for each offense, then the offenses will not merge, according to R.C. 2941.25(B). *Id.* at ¶ 51.

**{¶51}** The Ohio Supreme Court in *State v. Ruff,* 143 Ohio St.3d 114, 34 N.E.3d 892, 2015–Ohio–995, addressed the issue of allied offenses, determining the analysis set forth in *Johnson* to be incomplete:

**{¶52}** When the defendant's conduct constitutes a single offense, the defendant may be convicted and punished only for that offense. When the conduct supports more than one offense, however, a court must conduct an analysis of allied offenses of similar import to determine whether the offenses merge or whether the defendant may be convicted of separate offenses. R.C. §2941.25(B).

**{¶53}** A trial court and the reviewing court on appeal when considering whether there are allied offenses that merge into a single conviction under R.C. §2941.25(A) must first take into account the conduct of the defendant. In other words, how were the offenses committed? If any of the following is true, the offenses cannot merge and the defendant may be convicted and sentenced for multiple offenses: (1) the offenses are dissimilar in import or significance - in other words, each offense caused separate, identifiable harm, (2) the offenses were committed separately, and (3) the offenses were committed with separate animus or motivation.

**{¶54}** At its heart, the allied-offense analysis is dependent upon the facts of a case because R.C. §2941.25 focuses on the defendant's conduct. The evidence at trial or during a plea or sentencing hearing will reveal whether the offenses have similar import. When a defendant's conduct victimizes more than one person, the harm for

each person is separate and distinct, and therefore, the defendant can be convicted of multiple counts. Also, a defendant's conduct that constitutes two or more offenses against a single victim can support multiple convictions if the harm that results from each offense is separate and identifiable from the harm of the other offense. We therefore hold that two or more offenses of dissimilar import exist within the meaning of R.C. §2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable. *Id.* at ¶ 24–26.

{¶55} In the case *sub judice*, the testimony presented at trial demonstrates that J.J. suffered separate harm as a result of the felonious assault and domestic violence offenses. Appellant shoved J.J. to the ground, injuring his arm, when he attempted to intervene in the argument between Appellant and M.T., which was the basis for the domestic violence charge. The felonious assault count was based on Appellant's actions of punching J.J. in the face and knocking out one of his teeth after J.J. called the police.

{¶56} We find that the two offenses charged two separate acts, which occurred at two separate times, resulting in two separate injuries. The two assaults were also brought on by two different triggering events: the first from intervening in the argument between appellant and M.T. and the second for calling the police.

**{¶57}** We find, the record demonstrates J.J. suffered separate harm as a result of the commission of the domestic violence charge and the felonious assault charge; therefore, the trial court did not err in not merging Appellant's convictions.

**{¶58}** For the foregoing reasons, the judgment of the Court of Common Pleas of Richland County, Ohio, is affirmed.


By: Wise, J.

Farmer, P.J., and

Hoffman, J., concur.


JWW/d 0830